[No. 11544.    Department One.    April 29, 1914.]

NORTHERN BANK & TRUST COMPANY, Appellant v.
HELEN M. GRAVES et al., Respondents.[1]

HUSBAND AND WIFE—COMMUNITY DEBT—NOTE SIGNED BY WIFE—LIABILITY OF WIFE'S SEPARATE ESTATE. A promissory note executed by husbands and wives for a community debt binds the community and separate estates of the husbands and wives, whether the wives signed as makers or indorsers, in view of the removal of their common law disabilities to bind their separate estates.

BILLS AND NOTES—ACCOMMODATION PARTIES—MARRIED WOMEN—LIABILITY. Wives indorsing their names on the back of the promissory note of their husbands before delivery, are accommodation parties, under Rem. & Bal. Code, § 3420, defining an accommodation party as one who signed as maker, drawer, acceptor, or indorser without receiving value, and making such party liable thereon.

HUSBAND AND WIFE—WIFE'S SEPARATE PROPERTY—ASSUMING LIABILITY. The rule that a wife's separate estate is not liable for community debts does not prevent her from assuming such liability by

[1]Reported in 140 Pac. 328.

executing with her husband a promissory note in payment of the debt.

BANKRUPTCY—DISCHARGE—COMMUNITY DEBT—LIABILITY OF CO-DEBTOR. The discharge in bankruptcy of a husband on a community debt does not affect the right of the creditor to proceed against his wife's separate estate as a codebtor, where she had obligated' herself for the debt by signing a note therefor.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered August 6, 1913, in favor of the defendants, upon agreed facts, in an action on contract. Reversed.

*Shorett, McLaren & Shorett*, for appellant.

*Morris & Shipley* and *Paul S. Dubuar*, for respondents.

ELLIS, J.—This is an action against the defendant wives on a promissory note which was signed by them and also by their husbands. The husbands were made parties defendant in compliance with the statutory requirements that husbands be joined in suits against married women. Rem. & Bal. Code, § 181 (P. C. 81 § 11).

The action was tried before the court without a jury upon a written statement of agreed facts, from which it appears that the husbands, for some time, had been engaged in business as partners, under the firm name of Federal Paint & Wallpaper Company; that, in the prosecution of this business, they had become indebted to the plaintiff for money borrowed and used in the business, in the sum of $2,900, evidenced by five demand notes, executed by all of the defendants in this action; that, on July 1, 1912, about seven months after the maturity of the last note, the note now in controversy for $2,900, due one day after date, was executed by the partnership and also by the individuals composing it, and, before delivery, was signed on the back by the individual partners and their wives. There is no controversy as to the execution of the note. The note contains the usual words "one day after date, without grace, I promise to pay," and

waives presentment for payment, protest, and notice of protest for nonpayment by all the parties thereto. From the statement of agreed facts, it further appears that there was no consideration for the wives signing the note "other than such consideration as inured to the benefits of the matrimonial community existing between the said defendants E. L. Graves and Helen M. Graves, and said defendants G. E. La-Belle and Clara LaBelle." It is admitted that the husbands have gone into voluntary bankruptcy, and that the plaintiff filed its claim against the bankrupt estates on account of this note, and received a dividend of $152.01. It is further admitted that the plaintiff is the owner and holder of the note, and that no part of it has been paid, except interest to November 1, 1912, and this bankruptcy dividend. The trial court dismissed the action. The plaintiff appeals.

There is no claim of absence or failure of consideration as against the husbands, nor that the signatures of either the husbands or the wives to the note in question were obtained by fraud or through mistake. It is not claimed by the respondents that they signed as indorsers, their answer alleging and their argument being that they signed merely as members of their respective communities, and in order to bind the communities. This was, of course, unnecessary, since the signature of the husband alone to a note given for a community debt or in prosecution of a community enterprise is all that is necessary to bind the husband personally and the community, and to subject the community property to the judgment thereon. The signatures of the wives for this purpose would be an idle thing and without effect. The wives, in signing this instrument, must have intended that act to have some effect rather than none. *Toon v. McCaw*, 74 Wash. 335, 133 Pac. 469. Such also must have been the intention of the appellant in requiring their signatures. The fact that the wives made themselves parties to the note by signing it raises a presumption, not rebuttable by parol evidence, that they intended to bind themselves personally. In *Hemrich v. Wist*, 19 Wash. 516,

53 Pac. 710, the same defense was pleaded as that here in-
voked. The note was a joint and several note of the husband
and wife. The husband died. The note was not presented to
the administrator of the community estate within the time pre-
scribed by statute. Action was thereafter brought against
the wife upon the note. The answer alleged a parol under-
standing that she was not to be held personally liable thereon,
and that she signed it only as a member of the community.
This court, sustaining a demurrer to the answer, said:

"A defense of that kind should not be allowed to contradict
the terms of the written instrument. No fraud was alleged
as against the appellant in inducing her to sign the note, and
we are of the opinion that her separate property became lia-
ble upon the contract."

In *Lumbermen's Nat. Bank v. Gross*, 37 Wash. 18, 79 Pac.
470, this court, holding that a community debt was suffi-
cient consideration for a joint note of husband and wife, said:

"A community debt or obligation, past or present, is a
sufficient consideration for a joint note of the husband and
wife. Upon such a note a personal judgment can be re-
covered against both husband and wife, and on such judg-
ment the community property of the husband and wife, and
the separate property of either, not otherwise by law exempt,
can be taken in execution. It seems to us that any other rule
would lead to the utmost uncertainty and confusion. Under
the law of this state, a married woman has full liberty of con-
tract. In order to bind her separate property, it is not neces-
sary that she should enter into a specific agreement to that
effect or for that purpose. Her signature to a contract im-
ports the same obligation as the signature of any other per-
son, viz.: that a judgment may be taken against her for fail-
ure to perform, and that her separate property may be taken
in execution to satisfy the judgment."

We are thus committed to the doctrine, which it would seem
must, in any event, necessarily follow from the removal of
the wife's common law disability to contract, that a wife's sig-
nature to a contract imports the same obligation as the sig-
nature of any other person, namely, that a judgment may be

taken against her for her failure to perform, and that her sep-
arate property may be taken in execution to satisfy the judg-
ment.

As we have said, there is no claim that the wives signed
the note merely as indorsers, though the position of the
names, in the absence of the tacit admission that they signed
as makers, might, under the sixth clause of § 17 of the nego-
tiable instruments act, Rem. & Bal. Code, § 3408 (P. C. 357
§ 33), warrant the holding that they signed as indorsers.
Assuming, however, that they did sign as indorsers, that
would not alter the case. They must still be held to have
signed even in that capacity to some purpose rather than
none. Their liability, under the foregoing decisions, would
be the same as that of other indorsers. As pointed out in
*Bradley Engineering & Mfg. Co. v. Heyburn,* 56 Wash. 628,
106 Pac. 170, 134 Am. St. 1127, the main object of the ne-
gotiable instruments act was to make the law of negotiable
instruments certain and to make such instruments speak the
true intent of the parties. There is no good reason, either in
law or morals, why this purpose should not prevail, even as
between the original parties to a negotiable instrument, in
the absence of fraud, mistake or failure of consideration. In
any view of the case, the respondents must, under § 29 of the
negotiable instruments act be held as accommodation parties.
That section declares:

"An accommodation party is one who has signed the in-
strument as maker, drawer, acceptor or indorser, without re-
ceiving value therefor, and for the purpose of lending his
name to some other person. Such a person is liable on the
instrument to a  holder for value, notwithstanding such
holder at the time of taking the instrument knew him to be
only an accommodation party." Rem. & Bal. Code, § 3420
(P. C. 357 § 57).

As we have seen, if they were makers the community debt
was a sufficient consideration for the joint note of husband
and wife. If they be held indorsers, whether there was, in

fact, an independent consideration for their indorsement is immaterial, since, without consideration, they, as accommodation parties, would be liable to the holder for value even with notice that they were only accommodation parties. This same rule prevails as in favor of an original payee. *Gleeson v. Lichty*, 62 Wash. 656, 114 Pac. 518.

It is true that this court, in the early case of *Board of Trade of Seattle v. Hayden*, 4 Wash. 263, 30 Pac. 87, 32 Pac. 224, 31 Am. St. 919, 16 L. R. A. 530, held that, notwithstanding the wife's right to enter into contracts and manage her separate property, she cannot make a contract of partnership with her husband, and that, in the later case of *Elliott v. Hawley*, 34 Wash. 585, 76 Pac. 93, 101 Am. St. 1016, referring to the *Hayden* case, we said:

"The rule discussed and decided in the case cited is for the protection of the wife's separate property, to prevent her from entering into such engagements with her husband that her separate property may be taken from her in satisfaction of his debts."

That, however, is a very different thing from saying, as we are asked to say here, that the removal of the wife's disabilities does not authorize her to enter into the same contract and incur the same obligations to third persons that any other person *sui juris* may enter into and incur. The contract here, whether the respondents be regarded as makers or as indorsers, is a contract not with their husbands, but with the appellant.

It is also true, as this court has often held, that a wife's separate property is not ordinarily liable for community debts, but that is a very different thing from holding that she cannot make it so liable by her own contract. That, also, is a rule for her protection from the acts of her husband. It was never intended to reimpose her common law disabilities.

We have not discussed citations from other jurisdictions, since our own decisions are clearly controlling.

It cannot be doubted that a creditor has the right to pro-

ceed against a bankrupt debtor's codebtor, whether the co-debtor be primarily or secondarily liable.   Section 15 (a) Bankruptcy Act.

The judgment is reversed.

CROW, C. J., MAIN, CHADWICK, and GOSE, JJ., concur.