[No. 27740.  Department Two.  November 7, 1939.]

EUGENIA BAKAMUS, *Appellant*, v. JOSEPH F. ALBERT
*et al., Respondents.*[1]

*Christ D. Lillions,* for appellant.

*M. M. Pixley,* for respondents.

[1]Reported in 95 P. (2d) 767.

BEALS, J.—January 11, 1939, plaintiff, Eugenia Bakamus, formerly Eugenia Angell, filed her complaint herein against defendants, Joseph F. Albert and Doris, his wife, Harold D. Gingrich and Edna, his wife, and New Amsterdam Casualty Company of New York, surety on defendant Albert's bond as a real estate broker, asking for an accounting as to funds realized by Messrs. Albert and Gingrich from the sale of real estate belonging to plaintiff, and that plaintiff have judgment for such sum as might be found due her from defendants, and that she have general relief in the premises.

Defendants answered, denying liability and pleading two affirmative defenses, by the second of which they alleged that, under date June 30, 1937, after the transaction referred to by plaintiff in her complaint, plaintiff had signed and delivered a release exonerating defendants from all liability to her upon all claims whatsoever, including the claim sued upon herein.

Plaintiff having replied to the affirmative defenses, the action was tried to the court, sitting without a jury. The court entered findings of fact and conclusions of law, followed by a judgment dismissing plaintiff's action, from which judgment plaintiff has appealed.

At the trial, the action resolved itself into two phases: First, whether or not respondents had defrauded appellant in connection with the sale of the tract of real estate which she owned; and second, if respondents had in fact defrauded appellant, was appellant barred from recovering judgment against them by the release above referred to, which appellant admitted that she executed?

The court entered extensive findings of fact in appellant's favor upon the first phase of the case, finding facts which, if the findings are supported by the

evidence, clearly show that respondents, while acting as appellant's agents, defrauded her out of a considerable sum of money. The court then found that appellant had signed the written release above referred to and concluded that she was barred thereby from maintaining this action, and accordingly entered the judgment of dismissal.

Appellant assigns error upon the court's conclusion of law to the effect that appellant's cause of action is barred by the release; upon the refusal of the court to enter judgment in appellant's favor; and upon the entry of the judgment dismissing the action.

In support of her appeal, appellant has filed a statement of facts or bill of exceptions, which the trial court has certified contains all of the evidence, testimony, etc., bearing upon the question which appellant seeks to have reviewed before this court, to-wit, the execution by appellant of the release above referred to, and the ruling of the trial court to the effect that, by the execution and delivery of this release, appellant waived all further rights of action against respondents.

Respondents have moved to strike the statement of facts, contending that the same does not present all of the evidence necessary for a review of the judgment appealed from, and for other reasons assigned in respondents' motion. As all the evidence introduced before the court below is not before us, this court cannot review the findings upon the issue of fraud which the trial court entered in accordance with appellant's views of the evidence. We simply assume, for the purposes of this appeal, that respondents, by fraudulent representations, induced appellant to convey her property, to her damage; and that, but for the release which appellant subsequently signed, she would be entitled to judgment against respondents.

If this court should hold that appellant's contention on this appeal is well taken, and that she is not barred by the release which she signed, the cause would simply be remanded to the trial court, with instructions to proceed from that point and enter such judgment as the facts warrant, from which judgment any aggrieved party could appeal. The motion to strike the statement of facts is denied.

The only question, then, to be determined on this appeal is whether or not appellant is bound by the release which she signed. If that release bars appellant from now asserting any claims against respondents upon the cause of action set forth in her complaint, the judgment entered by the trial court was right and should be affirmed.

A brief statement of the facts leading up to and concerning the question here to be decided follows: Appellant, at respondents' solicitation, listed with them for sale a twenty-five acre tract of real estate in King county, which she owned as the result of a property settlement between her and her former husband, James B. Angell, from whom she was divorced in 1936. The property was sold, and in her complaint in this action appellant alleged that the respondents had defrauded her in connection with this sale and appropriated to themselves over two thousand dollars, a portion of the proceeds of the property which rightfully belonged to her.

It appears that, when appellant was preparing to convey this property, a search of the records disclosed a judgment against her former husband, Mr. Angell, which constituted a cloud on appellant's title. Respondents retained a sum of money (whether fifty or one hundred dollars, is not altogether clear) out of the proceeds of the property, to clear the land from the cloud created by the judgment. Respondent Albert

purchased the judgment and released appellant's land from the lien thereof. Later, he enforced collection of the entire judgment by execution on property belonging to Mr. Angell. When the latter later discovered that respondent Albert had received appellant's money for the purpose, as he contended, of satisfying the judgment, Mr. Angell sued respondents Albert for the recovery of the money which he had been compelled to pay.

In the course of negotiations between Mr. Angell's attorney and respondents' counsel, the latter discovered that there was some talk of fraud on the part of respondents in connection with their transaction with appellant, and respondents' counsel refused to settle the suit brought by Mr. Angell unless appellant's claims should also be released. In any event, respondents paid one hundred twenty-five dollars for a receipt or release, executed and acknowledged both by appellant and her former husband, James B. Angell. The release was in writing, and was offered as an exhibit on the trial of this action. The release reads as follows:

"WHEREAS, the undersigned, JAMES B. ANGELL and EUGENIA ANGELL, formerly the wife of said James B. Angell, hereinafter referred to as parties of the first part, have jointly and severally made and asserted claims, demands and causes of action against J. F. ALBERT, DORIS M. ALBERT, his wife, HAROLD GINGRICH and EDNA P. GINGRICH, his wife, hereinafter referred to as parties of the second part, and each of them, in connection with the sale and conveyance by said Eugenia Angell of certain real property in King County, Washington, which sale was evidenced by a deed which is recorded as Auditor's file No. 2918328 in volume 1704 of deeds at page 380, records of King County, Washington, including claims by the parties of the first part of fraud and misrepresentation in connection with said sale; and

"WHEREAS, the undersigned, James B. Angell, has commenced an action in the superior court of the state

of Washington for King County, entitled James B. Angell, plaintiff, vs. J. F. Alberts and Jane Doe Alberts, his wife, defendants, being cause No. 299355 of said court; and

"WHEREAS, the parties of the first part desire to fully settle and compromise all claims, demands and causes of action that they or any of them have or may have against the parties of the second part or any of them in accordance with the terms hereinafter stated;

"Now, therefore, in consideration of the sum of $125.00 in hand paid by parties of the second part to the parties of the first part, the receipt of which is hereby acknowledged, the parties of the first part and each of them do hereby forever release and discharge the parties of the second part and each of them from any and all claims, demands and causes of action now in existence or which may hereafter arise by reason of any matter, thing or transaction herein mentioned or referred to and by reason of any matter, thing or transaction of any kind or nature whatsoever from the beginning of the world to the date of this release; and the said James B. Angell hereby agrees to have entered forthwith a judgment of dismissal without costs and with prejudice in said cause No. 299355; and said James B. Angell does further agree to cause the judgment which has been entered in cause No. 287072 of the superior court of the state of Washington for King County, to be duly and regularly satisfied of record.

"DATED this 30 day of June, 1937.

"(Sd.)  EUGENIA BACKAMUS       (SEAL)
         formerly Eugenia Angell
        "JAMES B. ANGELL        (SEAL)"

Concerning the execution and delivery of the foregoing release, the trial court found that respondent J. F. Albert took an assignment of the judgment against James B. Angell and released appellant's property from the apparent or possible lien of the judgment, thereafter executing the judgment against property belonging to James B. Angell and receiving from him two hundred dollars, in full satisfaction thereof; that

thereafter, during the month of May, 1937, James B. Angell instituted an action before the superior court for King county against respondents Albert, seeking to recover the amount which he had paid in satisfaction of the judgment, claiming that respondent J. F. Albert had been paid in full all amounts due on the judgment by the money which Albert received out of the proceeds of the sale of appellant's property; that respondent Albert appeared in the action by Wendell W. Black, his attorney, and that thereafter negotiations were entered into between Mr. Black, representing respondents Albert, and Mr. Angell's attorney, S. E. Katopothis, with a view of effecting a settlement of the litigation; that, in the course of the negotiations between the attorneys, Mr. Black was informed by Mr. Katopothis that the purchase of the property by respondent J. F. Albert was fraudulent, and that the fact that J. F. Albert was, in fact, the "Joseph Francis" who had purchased the property, had been concealed from appellant; that, upon obtaining this information, Mr. Black refused to consider any settlement of the suit of Angell v. Albert, unless any claims on the part of appellant were also settled; that thereafter the attorney (not her present counsel) who had represented this appellant in the action in which she was divorced from Mr. Angell and in another matter, was instructed by appellant to represent her, and entered into negotiations with Mr. Black, making some investigation of appellant's claims, and that thereafter, on June 30, 1937, the written release above set forth was executed and acknowledged by appellant and by Mr. Angell; that, upon delivery of the release to Mr. Black, appellant and Mr. Angell received one hundred twenty-five dollars as consideration for the release, of which appellant received fifty dollars. This finding is amply supported by the evidence.

It appears probable from the evidence that Mr. Katopothis mentioned the matter of the negotiations to appellant's former counsel, and that the latter mentioned the matter to appellant, and subsequently represented appellant in negotiations which culminated in the execution of the release, which was prepared by Mr. Black. By its terms, the release directly refers to claims made and asserted by appellant against respondents, in connection with the sale of appellant's real estate above referred to, specifically describing these claims as based upon fraud and misrepresentation by respondents.

Appellant now seeks to avoid the effect of this release, which is general in its terms, as well as specific, by contending that money received by respondents as the proceeds of appellant's property became a trust fund for appellant, and that, in an action for an accounting of moneys held in trust, the consideration for a release must be payment in full; that, in any event, even in a general release, the releasor does not forfeit rights unknown to him at the time; and that a releasee cannot mislead the other party, conceal the fraud, and later set up the release to avoid liability. Appellant also contends that the amount paid under the release is so grossly inadequate, in view of the amount due appellant, that the release, for that reason, should be held void.

It appears that the question of possible fraud on the part of respondents as against appellant was first suggested to appellant and her counsel by Mr. Angell's attorney. Appellant, on the stand, professed a lack of understanding of the entire situation, but she unquestionably knew that her attorney was investigating some matters concerning her transaction with respondents, and later signed, acknowledged, and delivered the release, for the consideration named therein. There

can be no question but that full opportunity was afforded to consider the matter and make any investigation which she or her counsel thought necessary or proper.

Appellant testified that she first learned of the fraud which had been perpetrated upon her when her attention was called to the decision of this court in the case of *Carkonen v. Alberts,* 196 Wash. 575, 83 P. (2d) 899, which arose out of the same transaction which is the subject matter of this litigation, the plaintiff Carkonen contending that respondents had defrauded him in connection with the purchase of appellant's property.

As to the effect of the release, respondents rely upon the general rule that oral testimony shall not be admitted to vary the terms of a release, and that a general release settles all claims, including claims not specifically mentioned therein, and even those not in the contemplation of the parties at the time.

It is the general rule that ordinarily a release covers all such matters as may fairly be said to be within the contemplation of the parties when it was given, subject to provisos stated in the release, and no others. It has often been held that a demand of which a party was ignorant at the time of the execution of the release, was not embraced within its terms. This is particularly true in cases of a physical injury existing at the time of the giving of the release, but then unknown to the parties, especially if such an injury be of so serious a character as to indicate that, if it had been known, the release would not have been executed. It has, however, been very generally held that if, under the circumstances of the particular case,

"... a demand falls fairly within the terms of the release it is discharged thereby, whether or not it was contemplated by the parties, and whether or

not they were aware of its existence." 53 C. J. 1269, § 85 (2).

In the case of *Betcher v. Kunz*, 112 Wash. 563, 192 Pac. 955, it was held, in an action based upon an alleged conspiracy to defraud in connection with the sale of corporate stock to the plaintiff, that a settlement by the plaintiff with one of the persons from whom he had purchased stock operated to release not only the person to whom it was given, but other joint tort feasors against whom plaintiff sought to assert claims in the case cited. In the course of the opinion, this court said:

"When the release was executed and delivered, it at once produced a certain legal effect, provided its terms are given their plain meaning. This result cannot be varied by oral evidence that the parties did not intend what the language expressly shows that they agreed to. The plain language of the release cannot be contradicted and set aside by oral testimony."

In the case of *Shannon v. Prall*, 115 Wash. 106, 196 Pac. 635, it appeared that the plaintiff declared for services rendered under a written contract. The defendants denied liability and pleaded a release. Plaintiff appealed from a judgment of dismissal. The appellant sought to enforce against the respondent claims which were apparently included within the terms of a written release, contending that the obligation sued upon was not within the minds of the parties at the time the release was signed. It was held that the appellant was bound by the terms of the release, and could not vary those terms by parol evidence. It was also held that the document was more than a mere receipt, being of a contractual nature. It was contended that, when a release contains a particular recital, followed by general words, the latter will be qualified by the recital. In the case cited, it was held

that the writing was not subject to such a construction; but it must be borne in mind that, in the case at bar, a specific recital refers to the particular matter now in controversy. In the course of the opinion in the *Shannon* case, we said: "The release, being general, would reach an obligation owing by the respondent which was not mentioned therein." The judgment dismissing the action was by this court affirmed. The case is decidedly in point here.

The case last cited was considered and approved in the case of *Grandview etc. Co. v. Hartford Fire Ins. Co.*, 189 Wash. 590, 66 P. (2d) 827, 109 A. L. R. 1472.

The effect of a release is discussed in 23 R. C. L. 400-1. According to this authority, a release cannot be varied as against one whose interests may be affected thereby, by parol evidence to the effect that the release was not intended according to its legal effect, this rule being subject to an exception not pertinent to this inquiry.

As to the execution of the release by appellant, it nowhere appears that respondents or their attorney ever spoke to appellant about the matter. They certainly did nothing to mislead or deceive her in connection with the execution of that document, which is perfectly plain and unambiguous in its language and specifically refers to asserted claims by appellant against respondents in connection with the sale of appellant's property. The release could scarcely have been drawn in plainer language. The matter apparently was first called to the attention of appellant's then attorney, who made some investigation and, after conversation with appellant over the telephone, himself took to appellant the release, which she signed and acknowledged before him as a notary public.

On the insistence of Mr. Black, representing respondents, appellant was brought into the negotiations which

were pending for the settlement of the case of Angell v. Albert. Mr. Angell's attorney, who did not testify as a witness at the trial of this action, mentioned the matter to appellant's counsel, who then interviewed respondent Albert, who was very secretive, and refused to show his file on the real estate deal with appellant or to give any definite information concerning the "Joseph Francis" named as the grantee in the deed from appellant. When the release which Mr. Black had prepared was presented to appellant's attorney, and by him to appellant, it must be assumed that they read it, and that their attention was called to the fact that, by its terms, the release referred to claims by appellant that respondents had been guilty of fraud and misrepresentation in connection with the real estate transaction. No one hurried appellant, and she discussed the matter with no one save her own attorney. At her own convenience, appellant signed, acknowledged, and delivered the release, which she now contends does not operate as a bar to this action.

In support of her contentions, appellant cites many authorities. In some, the rule is laid down that a court of equity will limit a general release to matters contemplated by the parties at the time of its execution. These authorities are not controlling, as the release in the case at bar refers specifically to the matter of the sale of the land. Other authorities cited hold that a release of a future demand, not in existence at the time of the execution of the release, is void. Other cases hold that, if one seeking to avoid the operation of a release can show that, by mutual mistake or its equivalent, fraud on the part of the opposing party, a present cause of action was embraced within the release, contrary to the intent of the parties, the effect of the release may be avoided.

These authorities are not in point, because, in the

case at bar, in so far as the execution of the release was concerned, appellant cannot be heard to say that she did not understand the plain language of the document; and there was no fraud in connection with the execution of the release, as respondents never spoke to appellant concerning the matter, but simply handed to her attorney the release which they demanded, which is perfectly plain and unambiguous, and was intended by Mr. Black as a release of all claims on the part of appellant, and particularly the claim which appellant is now seeking to enforce. The mere fact that respondent Albert refused to answer questions propounded to him by appellant's counsel, did not constitute fraud; it would seem that his conduct on that occasion would have rather tended to suggest that further investigation was advisable; but in any event, it cannot be held that his conduct at that time constituted fraud on appellant.

In one of appellant's authorities, it was held that a release by a workman who had been severely injured, executed in consideration of the payment of five dollars, suggested such unequality in the entire transaction as was itself sufficient to raise not only the question of fraud, but the presumption of imposition. There are many cases in which persons who have been physically injured have escaped the effect of releases which they have signed for some small consideration, but these cases are not authority here, as, in almost all of them, the facts show that an injured person, ignorant of business, was imposed upon. In the case at bar, appellant was in full possession of her faculties and had the benefit of the advice of counsel. It does not appear that she was hurried in the matter, she had no dealings with respondents or any one representing them, and certainly she had every opportunity to make such investigations as she desired, and to

refuse to sign the release if she wished to take that stand.

Assuming, as found by the trial court, that appellant was grossly imposed upon and defrauded by respondents in connection with the sale of her land, we cannot but conclude that she is bound by the release which she signed, and that the trial court correctly so held and dismissed her action.

Judgment affirmed.

BLAKE, C. J., STEINERT, GERAGHTY, and JEFFERS, JJ., concur.