[No. 9599-4-I. Division One. March 7, 1983.]

William P. Brust, et al, *Respondents,* v. McDonald's Corporation, et al, *Appellants.*

*Williams, Novack & Hansen, Ronald Castleberry, Jeffrey Pratt, Carney, Stephenson, Badley, Smith & Mueller,* and *Edward Mueller,* for appellants.

*Bell & Ingram, P.S., Douglas L. Bell,* and *James H. Jones, Jr.,* for respondents.

CALLOW, J.—The defendants, McDonald's Corporation and James Watters, appeal a judgment, rendered after a nonjury trial, which granted two easements across certain property leased by the McDonald's Corporation from the plaintiffs, William P. Brust and E. A. Thacker. Two issues are presented:

1. Whether the trial court erred by admitting and considering parol evidence to construe the written lease and amendment to lease.

2. Whether the trial court erred in refusing to grant equitable relief on the basis of equitable estoppel or laches.

Brust and Thacker (hereinafter collectively referred to as Brust) are the owners of certain parcels of real property on the northeast corner of the intersection of 41st Street and Colby Avenue in Everett, Washington. These parcels will be designated as Parcel 1, Parcel 2, the eastern parcel and the western parcel.

Westbound traffic has direct access to Parcel 1 from 41st. Eastbound traffic on 41st Street, however, does not have direct access to Parcel 1 due to traffic control devices. No other public street provides access to Parcel 1. Parcel 2 lies immediately to the north of and adjacent to Parcel 1. There is no direct access to Parcel 2 from a public street.

The eastern parcel adjoins Parcels 1 and 2 on the east. There is no direct access to the eastern parcel via a public street except for westbound automobile traffic on 41st Street. The western parcel adjoins Parcels 1 and 2 on the west and is located at the northeast corner of the intersection of 41st Street and Colby Avenue. Westbound automobile traffic from 41st Street may directly access the western parcel. Eastbound traffic on 41st Street cannot directly

access the western parcel. Northbound and southbound traffic on Colby Avenue can directly access the western parcel.

On July 31, 1969, Brust leased Parcel 1 to the McDonald's Corporation (McDonald's), a Delaware corporation, pursuant to a lease (1969 lease) prepared by McDonald's. The lease expressly reserved a 20–foot–wide easement over Parcel 1. This reservation granted Brust and his assigns access for automobile traffic from Colby Avenue to Brust's eastern parcel over Parcel 1 (Parcel 1 easement). It also reserved a nonexclusive easement in favor of McDonald's to provide access from Colby Avenue over Brust's western parcel to Parcel 1 (Colby easement). The legal description of the Colby easement was subsequently prepared. However, the Parcel 1 easement, to date, has not yet been identified and located.

After the execution of the 1969 lease, McDonald's constructed a fast food restaurant on Parcel 1. McDonald's then entered into a contractual and sublease arrangement with James Watters, whereby Watters operated the restaurant. On September 21, 1973, Parcel 2 was leased to McDonald's pursuant to a written agreement prepared by McDonald's entitled "Amendment to Lease." McDonald's needed the additional property to expand its parking lot. The amendment also contained language which reserved a 20–foot easement over the leased property (Parcel 2 easement) and granted a reciprocal nonexclusive easement to McDonald's over Brust's adjacent property. The location of this easement has been set by survey to run across Parcel 2.

In the spring of 1978, Watters added a drive–in window served by drive–in lanes. This drive–through improvement included directional curbing upon the pavement, certain landscaping consisting of large planters, and construction of an outside callbox, all of which are located on the northern end of Parcel 1. This improvement has caused rush–hour traffic waiting to use the drive–in window to back up over the alleged Parcel 1 easement so as to block access over that route both to the eastern parcel and to the businesses

of Brust's other lessees located on Brust's western parcel. It also blocks utilization of the Parcel 2 easement at times.

On January 12, 1979, Brust complained to McDonald's about the obstruction to the alleged Parcel 1 easement. McDonald's response was to deny the existence of the Parcel 1 easement. Due to the obstruction and because Brust needed the Parcel 1 easement to further develop his eastern parcel, Brust filed suit on October 29, 1979, against McDonald's and Watters for declaratory relief. At trial on September 18, 1980, the trial court granted Brust's request for relief and declared a 20–foot–wide easement for automobile purposes across both Parcels 1 and 2; determined that the Parcel 1 easement is to be located on the northerly 40 feet of Parcel 1; required McDonald's and Watters to remove all obstructions within the Parcel 1 easement area; and enjoined them from operating or conducting their business in a manner so as to unreasonably obstruct or hinder the free flow of traffic upon the easements over Parcels 1 and 2. Brust was awarded judgment against McDonald's and Watters for attorney's fees and costs.

McDonald's and Watters appeal the judgment of the trial court.

The first issue is whether the trial court erred by admitting and considering parol evidence to construe the written lease and amendment to lease.

The parol evidence rule provides that

> prior conversations and negotiations, in the absence of ambiguity, merge into the final integrated writing. Parol evidence is not then admissible to contradict the terms of the instrument.

*Heath Northwest, Inc. v. Peterson,* 67 Wn.2d 582, 584, 408 P.2d 896 (1965); *see Fleetham v. Schneekloth,* 52 Wn.2d 176, 324 P.2d 429 (1958). Hence, parol or other extrinsic evidence is generally not admissible to add to, subtract from, vary or contradict written instruments which are contractual in nature and which are valid, complete, unambiguous, and are not affected by accident, fraud, or mistake. *Pederson v. Peters,* 6 Wn. App. 908, 910, 496 P.2d 970

(1972); *Bond v. Wiegardt,* 36 Wn.2d 41, 216 P.2d 196 (1950). However, the parol evidence rule should not be applied until the court has first determined as a matter of fact that the parties intended the written agreement to be a complete integration of the parties' agreement. *Diel v. Beekman,* 1 Wn. App. 874, 465 P.2d 212 (1970).

As noted in previous cases, confusion has resulted as to the proper application of the parol evidence rule in ascertaining the parties' intent in an agreement. *Weyerhaeuser Co. v. Burlington N., Inc.,* 15 Wn. App. 314, 317, 549 P.2d 54 (1976); *Lynch v. Higley,* 8 Wn. App. 903, 510 P.2d 663 (1973); *Eagle Ins. Co. v. Albright,* 3 Wn. App. 256, 474 P.2d 920 (1970). Consequently, two lines of cases have developed regarding the admissibility of parol evidence to clarify a written agreement. *See* Shattuck, *Contracts in Washington, 1937–1957: Part II,* 34 Wash. L. Rev. 345, 374–77 (1959).

Some cases have held that a court may look beyond the four corners of a written instrument only if the instrument, on its face, is ambiguous. This is sometimes referred to as the "mechanical rule." *Jacoby v. Grays Harbor Chair & Mfg. Co.,* 77 Wn.2d 911, 917, 468 P.2d 666 (1970); *Poggi v. Tool Research & Eng'g Corp.,* 75 Wn.2d 356, 451 P.2d 296 (1969); *Boeing Airplane Co. v. Firemen's Fund Indem. Co.,* 44 Wn.2d 488, 268 P.2d 654, 45 A.L.R.2d 984 (1954); *North Am. Non Metallics, Ltd. v. Erickson,* 24 Wn. App. 892, 896, 604 P.2d 999 (1979). Other cases have applied the "intent" test. Under the "intent" test, a court may examine parol evidence regarding circumstances surrounding the execution of a writing as an aid to its interpretation despite a lack of ambiguity on the face of the instrument. *Tube–Art Display, Inc. v. Berg,* 37 Wn.2d 1, 4, 221 P.2d 510 (1950); *J.W. Seavey Hop Corp. v. Pollock,* 20 Wn.2d 337, 349, 147 P.2d 310 (1944); *Vance v. Ingram,* 16 Wn.2d 399, 410–11, 133 P.2d 938 (1943); *Spokane Helicopter Serv., Inc. v. Malone,* 28 Wn. App. 377, 382, 623 P.2d 727 (1981).

In this case, we need not decide which test to apply. Washington case law indicates that the two tests have been

applied in order to determine, "*whether* the parties intended the written document to be an *integration* of their mutual agreement." *Weyerhaeuser Co. v. Burlington N., Inc., supra* at 318; *see Lynch v. Higley, supra.* Here, there is no dispute that the 1969 lease and its amendment were fully integrated. The issue of integration was not before the trial court and is not before us on appeal. The sole question is whether the two instruments were ambiguous as to the number of easements that were reserved. If so, the trial court could properly have considered parol evidence to explain the ambiguity and to ascertain the intent of the parties. *Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 852, 586 P.2d 845 (1978); *Corinthian Corp. v. White & Bollard, Inc.,* 74 Wn.2d 50, 442 P.2d 950 (1968); *Brower Co. v. Baker & Ford Co.,* 71 Wn.2d 860, 431 P.2d 595 (1967); *Ladum v. Utility Cartage, Inc.,* 68 Wn.2d 109, 411 P.2d 868 (1966).

The 1969 lease, in an addendum, contained the following language:

> Lessor reserves unto themselves or their assigns, for automobiles only, a twenty (20) foot wide exit and entrance for egress, ingress and access to and from Lessor's adjacent properties on the west and east boundaries of the leased premises and Lessee agrees that any barriers or obstructions to be placed on said exits or entrances shall not interfere with the free flow of traffic to and from said adjacent properties; and as the Lessor develops said adjacent properties there shall be reserved unto Lessee a common driveway over said properties of the Lessor to give to Lessee egress, ingress and access to Colby Avenue in the City of Everett, State of Washington.

The 1973 amendment to lease states, in pertinent part:

> The legal description of the demised premises contained in the Ground Lease dated July 31, 1969, is hereby amended to include the additional property in the City of Everett, County of Snohomish and State of Washington and commonly described as follows, to wit:
> [legal description of Parcel 2 omitted]
> Lessor reserves for themselves or their assigns, an easement for vehicular purposes over a 20 foot portion of the

demised premises and Lessor agrees to grant a reciprocal non–exclusive easement to Lessee over Lessor's adjacent property. Such mutual non exclusive easement shall be more particularly described upon receipt of an approved survey by a licensed surveyor of the State of Washington as aforementioned.

Since the 1973 amendment to lease refers to the 1969 lease, they should be read in conjunction with each other. *Turner v. Wexler,* 14 Wn. App. 143, 149, 538 P.2d 877 (1975); *see Spokane Helicopter Serv., Inc. v. Malone,* 28 Wn. App. 377, 382, 623 P.2d 727 (1981). When reading the two instruments together, an ambiguity arises, to wit: whether the parties intended the easement reserved in the 1969 lease to merge with that reserved in the amendment, or whether they intended the amendment to reserve a new easement separate and independent from that reserved in the 1969 lease. "'A written instrument is ambiguous when its terms are uncertain or capable of being understood as having more than one meaning.'" *Rydman v. Martinolich Shipbuilding Corp.,* 13 Wn. App. 150, 153, 534 P.2d 62 (1975) (quoting *Murray v. Western Pac. Ins. Co.,* 2 Wn. App. 985, 989, 472 P.2d 611 (1970)). Hence, the trial court properly admitted and considered parol evidence to resolve such ambiguity.

After consideration of the parol evidence, the trial court found:

> As a condition of leasing Parcel 2 to McDonald's Corporation, Plaintiffs required an additional easement across Parcel 2 (hereinafter referred to as the Parcel 2 easement), to provide additional access across Parcel 2 from the Colby easement to Plaintiff's still–undeveloped eastern parcel. During the negotiations, representatives of Defendant McDonald's Corporation requested that the Parcel 1 easement be relocated onto Parcel 2 rather than establishing two separate easements. Plaintiffs refused, and insisted that the Parcel 2 easement be in addition to the Parcel 1 easement. Since additional parking adjacent to Parcel 1 was not available elsewhere, the representatives of Defendant McDonald's Corporation agreed.

This finding is supported by substantial evidence

and will not be disturbed on appeal. *Seattle–First Nat'l Bank v. Brommers,* 89 Wn.2d 190, 199, 570 P.2d 1035 (1977); *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). The trial court correctly construed the 1969 lease and its amendment to have created two separate and independent easements.

The second issue is whether the trial court erred in refusing to grant equitable relief to McDonald's and Watters based on equitable estoppel and laches.

McDonald's and Watters contend that the failure of Brust to assert the Parcel 1 easement until after the drive-in window had been constructed with his full knowledge and acquiescence precludes him from now asserting such claim based on equitable estoppel and/or laches.

"Equitable estoppel arises when one wrongfully or negligently, by acts or representations, causes another who has a right to rely on such acts or representations to change position to its detriment." *Alaska Marine Trucking v. Carnation Co.,* 30 Wn. App. 144, 149, 633 P.2d 105 (1981). It has been otherwise stated to require:

> (1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act.

*Wagner v. Wagner,* 95 Wn.2d 94, 102, 621 P.2d 1279 (1980). The defense of laches is based upon equitable estoppel. It forbids the assertion of a right where others will be injured because of the claimant's delay. *Thorsteinson v. Waters,* 65 Wn.2d 739, 747, 399 P.2d 510 (1965). Laches will bar a claim when a claimant has unreasonably delayed where he could have proceeded and a change of conditions makes it inequitable to enforce the claim. *Panorama Residential Protective Ass'n v. Panorama Corp.,* 28 Wn. App. 923, 932, 627 P.2d 121 (1981).

In the instant case, McDonald's and Watters have not met their burden of proof. The equitable doctrines of

estoppel and laches are affirmative defenses upon which McDonald's and Watters have the burden of proof. *Fulle v. Boulevard Excavating, Inc.,* 20 Wn. App. 741, 744, 582 P.2d 566 (1978). "The burden of proving estoppel and the material facts to support estoppel is on the party claiming estoppel." *Alaska Marine Trucking v. Carnation Co., supra* at 149; *see State v. Charlton,* 71 Wn.2d 748, 751, 430 P.2d 977 (1967). Since the trial court made no findings upon the material facts relating to estoppel or laches, this court must imply a finding against the party having the burden of proof. *Fulle v. Boulevard Excavating, Inc., supra* at 744; *Rhodes v. Gould,* 19 Wn. App. 437, 576 P.2d 914 (1978).

■ Brust and Thacker have moved, with supporting argument, for an award of attorney's fees incurred in their defense of this appeal. Pursuant to RAP 18.1, they have filed an affidavit and time sheets detailing the necessity of requested fees of $11,375.32. The trial court awarded reasonable attorney's fees to Brust and Thacker in the amount of $3,500 based on a provision in the 1969 lease which provided that the lessee was to pay lessor's costs and expenses, including reasonable attorney's fees, in legal proceedings. Such a contractual provision encompasses fees necessary for appeal as well as for trial. *Schmitt v. Matthews,* 12 Wn. App. 654, 665, 531 P.2d 309 (1975). The respondents, Brust and Thacker, are entitled to a reasonable attorney's fee in the amount of $2,800 for this appeal.

The judgment is affirmed.

DURHAM, A.C.J., and RINGOLD, J., concur.